IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **TRACY DEWALD AND LESLIE A. WOOD,** : <br> : <br> *on behalf of themselves and all* : <br> *others similarly situated*, : <br> : <br> : <br> **Plaintiffs,** : <br> : <br> **v.** : <br> : <br> **TIME WARNER CABLE INC.**, *et al.*, : <br> : <br> **Defendants.** : | Case Nos. 16-cv-1129 <br> 17-cv-00631 <br><br> **CHIEF JUDGE ALGENON L. MARBLEY** <br><br> **Magistrate Judge Jolson** |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on the Parties' Joint Motion for Order to Approve Settlement and Stipulation of Dismissal with Prejudice in two consolidated matters: *Dewald v. Time Warner Cable Inc, et al.*, (ECF No. 108), and *Wood v. Time Warner Cable Inc, et al.*, (ECF No. 85). For the reasons set forth below, this Court **GRANTS with modifications** the Parties' Motions. (*Id.*).

### II. BACKGROUND

On November 29, 2016, Daylon Howard and Tracy Dewald filed this lawsuit (Case No. 2:16-cv-01129) ("Dewald Lawsuit"), alleging that they and other similarly situated employees were not paid for all hours worked, in violation of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). (ECF No. 85 ¶ 2). In particular, Plaintiffs alleged that they had to perform unpaid work before clocking in each day, which consisted of starting, booting up, and logging into Defendants' technological software systems. For example, gaining access to the computer and phone systems, and the various applications, required entry of

1

unique and often-changing passwords. (*Id.*). Common policy and practice, however, mandated that employees had the systems booted up prior to the start of the shift such that they could take their first call promptly. Plaintiffs allege this uncompensated worktime took about fifteen-to-twenty minutes each day. (*Id.* at ¶ 3).

On May 4, 2017, Marika Sims filed a lawsuit in the Northern District of Ohio ("Wood Lawsuit"), alleging that she and other similarly situated Inbound Sales Representatives were not paid for all hours worked for the same factual and legal bases as the Dewald Lawsuit set forth. (*Id.* at ¶ 13). On July 19, the Wood Lawsuit was transferred to this Court, and on August 3, this Court designated the Dewald Lawsuit and the Wood Lawsuit as related cases. On September 15, 2017, Leslie A. Wood withdrew from the Dewald Lawsuit and joined the Wood Lawsuit. (ECF Nos. 73, 42).

On May 10, 2017, Plaintiff filed a Motion for Conditional Certification in the Wood Lawsuit. (ECF No. 8). On May 25, Plaintiff filed for leave to file a Second Amended Complaint, (ECF No. 56), and also filed a Motion to Withdraw Plaintiff's Motion for Conditional Certification. (ECF No. 27). On June 1, Defendants filed a Motion to Dismiss, Motion to Transfer, Motion to Stay, and Motion for Sanctions in the Wood Lawsuit. (ECF No. 16). On June 15, Plaintiff filed her Opposition to Defendants' Motion to Dismiss, Motion to Stay, and Motion for Sanctions in the Wood Lawsuit. (ECF No. 20). On August 2, Defendants filed a Motion to Dismiss in the Wood Lawsuit. (ECF No. 32). On August 23, Plaintiff filed her Opposition to Defendants' Motion to Dismiss in the Wood Lawsuit. (ECF No. 37). On September 11, this Court stayed the Dewald Lawsuit and held in abeyance all previously filed Motions. (ECF No. 72). On September 15, Plaintiff filed her Motion for Conditional Certification in the Wood Lawsuit. (ECF No. 43).

On January 24, 2018, Plaintiff filed a Motion for Leave to File Second Amended Complaint to Substitute the Named Plaintiff in the Wood Lawsuit. (ECF No. 55). On February 24, Defendant opposed Plaintiff's Motion to Substitute Name Plaintiff in the Wood Lawsuit. (ECF No. 56). On February 14 and 21, this Court administratively closed the Dewald Lawsuit and Wood Lawsuit, pending the United States Supreme Court decision in *Ernst & Young v. Morris*, No. 16-300. (ECF Nos. 76, 57).[1]

Both lawsuits were reopened in May, and this Court ordered the parties to re-file any motions they wished the Court to consider. (ECF Nos. 77, 59). On June 18, 2018, Defendants re-filed their Motion to Dismiss and For Sanctions in the Wood Lawsuit, (ECF No. 61), which Plaintiff opposed on July 9, 2018. (ECF No. 62). On July 12, 2018, Plaintiff re-filed her Motion for Leave to File Second Amended Complaint to Substitute Named Plaintiff in the Wood Lawsuit, (ECF No. 63), which Defendants opposed on August 1, 2018. (ECF No. 65). On August 3, 2018, Defendants' filed a Motion for Summary Judgment against Plaintiff Dewald, alleging she was exempt from the FLSA under the retail sales exemption. (ECF No. 79). On August 24, 2018, Plaintiff filed a Motion to Stay Briefing on Defendants' Motion for Summary Judgment. (ECF No. 80). On September 14, 2018, Defendants filed their Opposition to Plaintiff's Motion to Stay. (ECF No. 81). On September 28, 2018, Plaintiff filed her Reply in Support of her Motion to Stay. (ECF No. 82).

On November 26, 2018, the Parties stipulated to the dismissal of the Plaintiffs in the Dewald Lawsuit that were subject to Defendants' arbitration agreement. (ECF No. 84). On December 7, Leslie Wood became the Named Plaintiff of the Wood Lawsuit. On February 21, Plaintiff filed her Opposition to Defendants' Motion for Summary Judgment in the Dewald

---

[1] This Court did so over a circuit split concerning an arbitration provision requiring employees to arbitrate individually all employment-related claims is enforceable under the Federal Arbitration Act.

Lawsuit. (ECF No. 88). On April 5, this Court set a hearing on Defendants' Motion for Summary Judgment in the Dewald Lawsuit for April 26, 2019. (ECF No. 90). On April 17, the Parties moved to Stay the Wood Lawsuit, (ECF No. 77), which the Court granted on April 18. (ECF No. 78). On April 19, the Parties moved to Stay the Dewald Lawsuit, (ECF No. 93), which the Court granted on April 22, 2019. (ECF No. 94).

The Parties engaged in a comprehensive exchange of information and extensive discovery regarding Plaintiffs' claims and Defendants' defenses to such claims. (ECF No. 85 at ¶ 46). This included propounding and responding to Interrogatories and Requests for Production of Documents and conducting depositions of all seven (7) of the Plaintiffs in the Wood Lawsuit (one in Savannah, Georgia) and three Rule 30(b)(6) witnesses designated by Defendants in Stamford, Connecticut. (*Id.*). The comprehensive exchange also included a complete analysis and calculation of all of both Named Plaintiffs' and the Opt-In Party Plaintiffs' alleged overtime damages. (*Id.* at ¶ 18.)

Between April 2019 and November 2019, the Parties engaged in settlement negotiations. (*Id.* at ¶ 19). Private mediation was unsuccessful, but the Parties continued to engage in settlement negotiations by and through Jerry Weiss, and on November 7, 2019, in an effort to reach a compromise and to avoid the expense and burden of litigation, the Parties reached an agreement to settle the Dewald Lawsuit and the Wood Lawsuit on the terms set forth in the Settlement Agreement and Release attached as Exhibit 1. (*Id.* at ¶ 21).

The Settlement covers the Named Plaintiffs and the 28 Opt-In Plaintiffs who opted into the Dewald and Wood Lawsuits and consented to be bound by any settlement reached by the Parties and did not sign arbitration clauses. (*Id.* at ¶ 24.) Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 opt-out settlement

4

that would bind absent class members, and because the opt-ins already consented to either Tracy Dewald or Leslie Wood as the Named Plaintiffs and to be bound by any settlement and/or judgement in this case, no fairness hearing is required or requested by the Parties. Plaintiffs' Individual Payments are based proportionally on each Plaintiffs' alleged overtime damages during the Released Period. (*Id.* at ¶ 33).

### III. LAW & ANALYSIS

As a general rule, "[t]he FLSA's provisions are mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). One exception is when a court reviews and approves a settlement agreement in a private action for back wages under 29 U.S.C. § 216(b). *Id.* The Court's role in approving an FLSA settlement, and presumably an Ohio wage and hour settlement, "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *See id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *5 (N.D. Ohio Mar. 8, 2010)). Hence, the Court must ensure that there is a bona fide dispute between the parties and that the settlement is a product of arms-length negotiation that was fair, reasonable, and adequate. *See id.* at *5-6.

#### A. Whether there was a Bona Fide Dispute Between the Parties

The requirement that there be a bona fide dispute between the parties stems from the need to ensure the parties are not negotiating around the FLSA's requirements concerning wages and overtime. *Id.* at *5. At the heart of this case is whether Plaintiffs are entitled to compensation for the time they worked at Time Warner Cable, TWC Administration, and Charter Communications. Plaintiffs maintain that Defendants failed to pay them for the overtime that they worked, while Defendants dispute any liability. The Parties agree that there is a bona fide dispute over whether

5

the two-year or three-year statute of limitations applies, and whether Plaintiffs would be entitled to liquidated damages, as Defendants claim they did not act willfully and have good-faith defenses to Plaintiffs' claims. The parties, further, participated in an all-day private mediation, and later reached a compromise to settle the lawsuits. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Given the above, the Court is satisfied that the Settlement Agreement is not an attempt to negotiate around the FLSA's mandatory requirements of compensating employees for unpaid wages.

## B. Whether Negotiations were Fair, Reasonable, and Adequate

In determining whether a proposed FLSA settlement is fair, reasonable, and adequate, a district court is required to consider and balance several factors: (a) Plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the judgment of experienced trial counsel; (e) the nature of the negotiations; (f) the objections, if any, raised by the class members; and (g) the public interest. *Kritzer*, 2012 WL 1945144, at *6. Here, the Court finds that the balance of factors weighs in favor of approving the Settlement Agreement.

### 1. Likelihood of Success

The most important factor the Court must consider when approving an FLSA settlement "is the plaintiffs' probability of success on the merits, particularly when weighed against the recovery provided in the proposed settlement agreement." *Id.* The lower the likelihood of success, the more desirable a settlement. *Id.*

Here, the parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's various defenses. While Plaintiffs allege that Defendant failed to pay them overtime for the time, they worked in excess of forty hours per week, Defendants dispute any liability. Defendants denied and continue to deny that Plaintiffs were owed any compensation for any unpaid work as the tasks Plaintiffs allegedly completed prior to clocking in took less than one minute to complete, or was otherwise de minimis. Defendants denied and continue to deny that three-year willful statute of limitation applies in this case. In light of the uncertainty surrounding Plaintiffs' likelihood of success, this Court finds that this factor weighs in favor of approval.

### 2. *Complexity and Expense of Litigation*

The second factor the Court must consider is the complexity and expense of potential litigation. Here, Plaintiffs faced multiple, and potentially expensive, hurdles to victory. Some of these hurdles include overcoming a motion to dismiss, a motion to oppose certification, and eventually a trial. Additionally, Plaintiffs argue that even if they were successful on the merits of their claim, Defendants dispute the amount that would be due to them, so the amount of their recovery is uncertain. The Settlement Agreement eliminates these burdens, and thus, weighs in favor of approval.

### 3. *Stage of Proceedings*

The third factor is intended to ensure Plaintiffs have had access to the information needed adequately to assess their case and the desirability of the Settlement Agreement. *See Kritzer*, 2012 WL 1945144, at *7. The parties represent they have engaged in extensive discovery, including propounding and responding to Interrogatories and Requests for Production of Documents and conducting depositions. Because Plaintiffs have had available to them all the information needed to make an informed decision about the settlement, this factor weighs in favor of approval.

7

### 4. *Judgment of Experienced Counsel*

By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate. The Court gives great weight to the beliefs of experienced counsel. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Ms. Griffin, counsel for Plaintiffs, handles regularly claims that include misclassifying employees as exempt or as independent contractors, failing to pay for off-the-clock work, pre-shift and post-shift work, changing into and out of uniforms, meal periods, short rest periods and travel time, improper rounding of start and stop times, and improper tip pooling. (ECF No. 85-2, ¶ 3). Accordingly, this factor weighs in favor of approval.

### 5. *Nature of Negotiations*

Before approving an FLSA settlement, the Court must be convinced that the parties' Settlement Agreement "is non-collusive and the product of arms-length negotiations." *Kritzer*, 2012 WL 1945144, at *7. Here, the Settlement Agreement is a product of private mediation. Indeed, the parties spent a full day on July 8, 2019, negotiating a settlement with an independent mediator. Given these representations, the Court is satisfied that the Settlement Agreement is a product of arms-length negotiations.

### 6. *Objections by Class Members*

In evaluating an FLSA settlement agreement the Court is required to consider objections, if any, raised by class members. There have been no such objections in this case.

### 7. *Public Interest*

The final factor the Court must consider is whether the public interest would be served by settlement. Because the parties' Settlement Agreement would end potentially long and protracted

litigation, the Court finds that this factor weighs in favor of approval. *Kritzer*, 2012 WL 1945144, at *8 ("While this case is not of general public interest, the public interest in favoring settlement certainly applies here, as the proposed settlement ends potentially long and protracted litigation.").

In sum, each of the seven fairness factors weigh in favor of approving the parties' Settlement Agreement.

### C. Whether the Attorneys' Fees and Costs Award is Reasonable

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

There are two methods for determining whether proposed attorney's fees are appropriate: the lodestar and the percentage-of-the-fund. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgt. Group, LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (approving of attorney's fees in the amount of 1/3 of the settlement fund). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A district court has discretion to select which method is appropriate given the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id*. Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Id*. at 501. Courts also frequently consider several factors in determining if attorney's fees are reasonable including:

> (1) the value of the benefit rendered to the class, (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an

9

> hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides.

*Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *15 (S.D. Ohio Feb. 7, 2014). The party seeking attorneys' fees bears the burden of documenting his entitlement to the award. *Id.* at 472.

Here, counsel for Plaintiffs is set to receive a fees and costs award of **$96,619.95** under the Settlement Agreement, which represents approximately 60% of the total settlement fund of **$150,000**. Plaintiffs' counsel argues that this fee is appropriate pursuant to the lodestar method. Specifically, counsel represents that this is less than the lodestar method, given the following amount of hours at the corresponding hourly rates of pay: Counsel for Plaintiffs, Anthony J. Lazzaro, represents that he has billed 73 hours at a billing rate of $450 per hour; Chastity L. Christy represents that she has billed 252 hours at a billing rate of $450; Lori M. Griffin represents that she has billed 365 hours at a billing rate of $350.

As mentioned above, courts in this district have two choices when reviewing settlement agreements under FLSA: the lodestar method and the percentage-of-the-fund method. Absent compelling reasons to the contrary, this Court prefers the percentage-of-the-fund method, as it best reflects FLSA's employee-protection objective. The Court thus finds it appropriate to reduce the requested fees to the percentage-of-the-fund method, i.e., 1/3 of the total settlement amount. This should not be seen as an indictment of what counsel did or failed to do. Rather, when there is a common fund, this Court's strong preference is to give the maximum benefit to the aggrieved party. This Court finds that the balance of the below factors weighs in favor of finding the percentage-of-the-fund amount reasonable. Accordingly, Plaintiffs' counsel will receive 1/3 of the **$150,000** settlement fund, i.e., **$50,000**, with the remainder going to the Plaintiffs. This Court finds

that the balance of the below factors weighs in favor of finding percentage-of-the-fund amount reasonable, and the use of the lodestar method unreasonable.

### 1. Value of Benefits Rendered

The result that counsel has achieved in this case fairly compensates Plaintiffs since each Plaintiff is expected to receive a higher percentage of damages they could have received at trial. *Michel*, 2014 WL 497031, at *15 (S.D. Ohio, 2014) (noting a "monetary recovery consisting of over 70% of class members' estimated damages has been recognized as a 'substantial and certain' benefit to the members . . . a recovery of approximately 50% of an average class member's damages has been recognized as 'a moderately good' result") (internal citations omitted).  This factor, therefore, weighs in favor of awarding attorneys' fees under the percentage-of-the-fund method.

### D. Societal Stake in Attorneys' Fees

The second factor, society's stake in rewarding attorneys who produce such benefits, also favors the proposed fees award.  This is because "[s]ociety has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *See id.* at *16. Here, counsel was integral in helping Plaintiffs recover damages for unpaid wages. This factor weighs in favor of awarding attorneys' fees under the percentage-of-the-fund method.

### E. Whether Services were Undertaken on Contingent Fee Basis

It is not apparent from the Joint Motion for Approval of Settlement whether counsel took this case on a contingency fee basis. If so, they "undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant recovery here." *See id.* Since counsel does not specify whether the case was undertaken on a contingency fee basis, this third factor does not support the proposed fees award.

### F. Value of Services on Hourly Basis

11

As to the value of the services rendered on an hourly basis, this factor weighs in favor of the proposed fees award. Counsel for Plaintiffs have billed slightly more than the fee that the request here, which is close to the lodestar amount. Hence, Plaintiffs received adequate representation. This factor weighs in favor of awarding fees under the percentage-of-the-fund method.

### G. Complexity of Litigation

With respect to the complexity of the litigation, this case has been pending for over two years and has involved extensive discovery, motion practice, and mediation. Furthermore, the claims and defenses in this suit have been and continue to be contested. Thus, this factor weighs in favor of the awarding fees under the percentage-of-the-fund method.

### H. Skill of Counsel

The final factor, the professional skill and standing of the attorneys involved, also weighs in favor of the proposed fees award. Counsel has detailed the efforts that went into litigating and settling this case, as well as the reputation of the law firms involved. Moreover, because of counsel's efforts, Plaintiffs were able to recoup 150% of the total damages they could have received at trial. Accordingly, the Court finds that the proposed attorneys' fees and costs award is reasonable if calculated under the percentage-of-the-fund method.

### I. Whether the Representative Plaintiff's Service Payment Award is Reasonable

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). Furthermore, Courts have established that "differentiation among class representatives based upon

the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)); s*ee also Enterprise Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240, 250 (S.D. Ohio 1991) (stating the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members"). Here, representative Plaintiffs Wood and Dewald have contributed significant time and effort to this case. Accordingly, the Court finds that the Representative Plaintiff's time and efforts support the requested service payment of $5,000 of the Total Settlement Amount, in the amount of $2,500.00 each, in exchange for their release of all claim.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS with modifications** the Joint Motion for Settlement Approval (ECF Nos. 85, 108).

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　**ALGENON L. MARBLEY**
　　　　　　　　　　　　　　　　　　　　　　　**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: February 16, 2021**